

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **VS.** | § | **CASE NO. 1:07-CR-115(3)** |
| | § | |
| **MARIO ANTONIO GOMEZ** | § | |

### FINDINGS OF FACT AND RECOMMENDATION ON GUILTY PLEA BEFORE THE UNITED STATES MAGISTRATE JUDGE

The District Court referred this matter to the undersigned United States Magistrate Judge for administration of a guilty plea and allocution under Rules 11 and 32 of the Federal Rules of Criminal Procedure. Magistrates have the statutory authority to conduct a felony guilty plea proceeding as an "additional duty" pursuant to 28 U.S.C. § 636(b)(3).  *United States v. Bolivar-Munoz*, 313 F.3d 253, 255 (5th Cir. 2002), *cert. denied,* 123 S. Ct. 1642 (2003).

On February 26, 2008, this cause came before the undersigned United States Magistrate Judge for entry of a guilty plea by the Defendant, Mario Antonio Gomez, on **Count I** of the charging **Indictment** filed in this cause. Count I of the Indictment charges that from on or about some time in early 2004 and continuing thereafter up to and including February, 2007, in the

Eastern District of Texas, and elsewhere, Abraham Padron Herrera, Juan Pineda, and Mario Antonio Gomez, Defendants herein, and others both known and unknown to the Grand Jury, did knowingly and intentionally conspire with each other, as well as others persons, to knowingly and intentionally distribute and possess with intent to distribute 5 kilograms or more of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841, all in violation of Title 21, United States Code, Section 846.

Defendant, Mario Antonio Gomez, entered a plea of guilty to Count I of the Indictment into the record at the hearing.

After conducting the proceeding in the form and manner prescribed by Federal Rule of Criminal Procedure 11 the Court finds:

a.  That Defendant, after consultation with counsel of record, has knowingly, freely and voluntarily consented to the administration of the guilty plea in this cause by a United States Magistrate Judge in the Eastern District of Texas subject to a final approval and imposition of sentence by the District Court.

b.  That Defendant and the Government have entered into a plea agreement which was disclosed and addressed in open court, entered into the record, and placed under seal.

c.  That Defendant is fully competent and capable of entering an informed plea, that Defendant is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing, voluntary and freely made plea. Upon addressing the Defendant personally in open court, the Court determines that Defendant's plea is voluntary and did not result from force, threats or promises. *See* FED. R. CRIM. P. 11(b)(2).

d.   That Defendant's knowing, voluntary and freely made plea is supported by an independent factual basis establishing each of the essential elements of the offense and Defendant realizes that his conduct falls within the definition of the crime charged under 21 U.S.C. §§ 841(a)(1) and 846.

## STATEMENT OF REASONS

As factual support for Defendant's guilty plea, the Government presented the following evidence, which was admitted into the record at the plea hearing. *See Factual Basis and Stipulation*. If the case proceeded to trial, the Government and Defendant agreed and stipulated to the information set forth in the factual basis which would be used by the Government in support of the Defendant's plea of guilty. The Government and Defendant agreed that the Government would have proven that Defendant is one and the same with the person charged in the Indictment and that the events described in the Indictment occurred on the dates and in the places alleged in the Eastern District of Teas. The Government and Defendant agreed that the Government would have proven, through the testimony of witnesses and through admissible exhibits, beyond a reasonable doubt, each and every essential element of the offense alleged; specifically, the Government would have proven certain stipulated facts set forth in the *Factual Basis,* on file in the record of this cause, as follows:

On the afternoon of March 12, 2004, a flatbed truck bearing Mexican license plates entered the United States border crossing at Eagle Pass, Texas and was subjected to extensive inspection due to its suspicious nature. The inspection of the cargo, a large multi-wheeled dolly, revealed cocaine secreted in the tires of the dolly. The kilo bundles of cocaine weighed

approximately 119 kilograms. A controlled delivery of a portion of the cocaine cargo, approximately 10 kilograms, was arranged with two undercover agents continuing to drive the flatbed truck to Houston as previously scheduled. Utilizing phone numbers provided by the Mexican customs broker, the undercover agents were to deliver the truck to Greenspoint Mall in Houston, Texas where they would be met by unknown persons who would take possession of the dolly. On March 14, 2004, the agents arrived at Greenspoint Mall and were met by a wrecker driver who advised that persons in a nearby red Suburban vehicle had paid him to take delivery of the cargo. A red suburban was seen driving around the parking area in what appeared to be counter-surveillance. A silver colored Dodge truck was also doing counter surveillance in the parking lot. The agents refused to turn over the cargo until paid for their delivery. At that point three people from the Suburban approached the agents and paid them $460 for their delivery. One of the individuals making the payment was the defendant Mario Antonio Gomez. The wrecker driver then took the cargo and delivered it to a house on Chippewa Street in Houston where the Suburban also was observed. After the cargo dolly was placed in the garage of the residence, the Suburban left the residence and proceeded to the residence of co-defendant Abraham Padron Herrera on Marvel Street in Houston. A search warrant on the Chippewa house was executed that evening and the controlled delivery amount of cocaine was recovered. Two occupants of the house were interviewed and one, a local painter, identified the defendant Mario Antonio Gomez as having hired him to give an estimate to paint the house.

     Task force agents with the Drug Enforcement Administration (DEA) task force agents would also testified that, through a cooperating witness, they arranged to purchase a kilo of

cocaine from defendant Mario Antonio Gomez. Some of the preliminary discussions for this purchase were recorded by the cooperating witness. Gomez agreed and on September 30, 2005, arranged for an associate to deliver a kilogram to an undercover officer for which $15,000 was paid. The substance, however, was determined not to be cocaine upon laboratory analysis. The cooperating witness would further testify though that Gomez has made numerous statements about his involvement in a distribution ring which makes multi-kilo deliveries from the Rio Grande Valley to various points in the Southeast.

Toll records would be introduced which would show hundreds of phone calls between a cell phone identified with Mario Antonio Gomez and one identified with co-defendant Padron Herrera during the time period of the conspiracy. Further, a cell phone in Defendant Gomez' possession at the time of his arrest contained the phone numbers of several co-conspirators, including Padron Herrera.

A laboratory analyst from the DEA South Central Regional Crime Laboratory would testify as an expert in the analysis of controlled substances that a sampling from several kilo bundles of the 119 kilogram seizure was taken and analyzed and was determined to be cocaine, a schedule II controlled substance, with an actual weight of 119 kilograms.

DEA Special Agent Duke Covey, assigned to the Drug Enforcement Administration narcotics task force, would testify as an expert in drug trafficking and would testify that the amount of cocaine seized is indicative of drug trafficking.

At the guilty plea hearing, the Government also proffered evidence stating that the Government would also be able to prove that on November 15, 2005, and January 23, 2006, Mr.

5

Gomez' co-defendants, Herrera and Pineda, made two sales of cocaine in the Eastern District of Texas in an amount of approximately 500 grams. Special Agent Covey would testify to these facts. The Defendant stated on the record that he did not know if this information was true, but that he agreed that the Government could prove it at trial.

Defendant, Mario Antonio Gomez, agreed with the facts set forth by the Government, as explained above, and signed the *Factual Basis*. Counsel for Defendant and the Government attested to Defendant's competency and capability to enter an informed plea of guilty. The Defendant agreed with the evidence presented by the Government and personally testified that he was entering his guilty plea knowingly, freely and voluntarily.

## **RECOMMENDED DISPOSITION**

**IT IS THEREFORE** the recommendation of the undersigned United States Magistrate Judge that the District Court accept the Guilty Plea of Defendant which the undersigned determines to be supported by an independent factual basis establishing each of the essential elements of the offense charged in **Count I** of the charging **Indictment** on file in this criminal proceeding. The Court also recommends that the District Court conditionally accept the plea agreement.[1] Accordingly, it is further recommended that, Defendant, Mario Antonio Gomez, be

---

[1] "(3) Judicial Consideration of a Plea Agreement.
(A) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report.
(B) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(B), the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request.
(4) Accepting a Plea Agreement. If the court accepts the plea agreement, it must inform the defendant that to the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the agreed disposition will be included in the judgment.
(5) Rejecting a Plea Agreement. If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):
(A) inform the parties that the court rejects the plea agreement;
(B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant

finally adjudged as guilty of the charged offense under Title 21, United States Code, Sections 841(a)(1) and 846.

Defendant is ordered to report to the United States Probation Department for the preparation of a presentence report. At the plea hearing, the Court admonished the Defendant that the District Court may reject his plea and that the District Court can decline to sentence Defendant in accordance with the plea agreement, the federal sentencing guidelines and/or the presentence report because the sentencing guidelines are advisory in nature. The District Court may defer its decision to accept or reject the plea agreement until there has been an opportunity to consider the presentence report. *See* FED. R. CRIM. P. 11(c)(3). If the Court rejects the plea agreement, the Court will advise Defendant in open court that it is not bound by the plea agreement and Defendant may have the opportunity to withdraw his guilty plea, dependent upon the type of the plea agreement. *See* FED. R. CRIM. P. 11(c)(3)(B). If the plea agreement is rejected and Defendant still persists in the guilty plea, the disposition of the case may be less favorable to Defendant than that contemplated by the plea agreement. Defendant has the right to allocute before the District Court before imposition of sentence.

## **OBJECTIONS**

Within ten (10) days after receipt of this report, any party may serve and file written objections to the report and recommendation of the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(C). Failure to file written objections to the proposed findings of facts, conclusions of

---

an opportunity to withdraw the plea; and
(C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated." FED. CRIM. P. 11(c)(3)-(5).

7

law and recommendations contained within this report within ten (10) days after service shall bar an aggrieved party from *de novo* review by the District Judge of the proposed findings, conclusions and recommendations, and from appellate review of factual findings and legal conclusions accepted by the District Court except on grounds of plain error. *Douglass v. United Serv. Auto. Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*); 28 U.S.C. § 636(b)(1). The constitutional safeguards afforded by Congress and the courts require that, when a party takes advantage of his right to object to a magistrate's findings or recommendation, a district judge must exercise its nondelegable authority by considering the actual evidence and not merely by reviewing and blindly adopting the magistrate's report and recommendation. *See Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir. 1983); *United States v. Elsoffer*, 644 F.2d 357, 359 (5th Cir. 1981) (per curiam).

**SIGNED this the 27th day of February, 2008.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE

8